833 F.2d 149
 RICO Bus.Disp.Guide 6801
 Howard JARVIS, an individual; the Conservative Caucus,
Inc., a Virginia nonprofit corporation,
Plaintiffs-Appellants,
v.
Donald T. REGAN, Secretary of the United States Treasury;
Legal Services Corporation, a District of Columbia
corporation; Western Center on Law and Poverty, Inc., a
California nonprofit corporation; Legal Aid Foundation of
Los Angeles, a California nonprofit corporation; "Jarvis II
Task Force," an association; Does 1-40, organizations; and
Does 41-50, individuals, Defendants-Appellees.
 No. 84-5900.
 United States Court of Appeals,
Ninth Circuit.
 Argued April 4, 1985.
Submitted July 2, 1986.
Decided Nov. 27, 1987.
 
 Lawrence J. Straw, Jr. and Judith K. Otamura-Kester, Smaltz & Neelley, Los Angeles, Cal., for plaintiffs-appellants.
 Robert S. Greenspan, Asst. U.S. Atty., Civil Div., Washington, D.C., John H. Brinsley, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., Nancy Y. Bekavac, Munger, Tolles & Rickershauser, Los Angeles, Cal., John E. Mueller and Marguerite Mary Leoni, Nielsen, Hodgson, Parrinello & Mueller, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before HUG and BOOCHEVER, Circuit Judges, and PATEL,* District Judge.
 HUG, Circuit Judge:
 
 
 1
 Howard Jarvis and the Conservative Caucus, Inc., ("appellants"), appeal from the district court's order dismissing with prejudice their complaint against the appellees, the Legal Services Corporation ("LSC"), the Western Center on Law and Poverty, Inc., ("Western Center"), the Legal Aid Foundation of Los Angeles ("LAFLA"), the Jarvis II Task Force, and Donald T. Regan. We affirm the judgment of the district court.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 The LSC came into existence in 1975 under the Legal Services Corporation Act of 1974, ("LSCA"), 42 U.S.C. Sec. 2996 et seq. (1982). The LSC was created for the purpose of providing financial support for legal assistance to indigent persons in civil proceedings. 42 U.S.C. Sec. 2996b(a). Accordingly, the LSC is authorized to distribute funds by grant or contract to qualified legal aid organizations. 42 U.S.C. Sec. 2996e(a). Western Center and LAFLA are nonprofit corporations whose primary source of funding is the LSC.
 
 
 3
 The appellants were the principal proponents of Proposition 9, a 1980 California ballot initiative, which would have reduced the state income tax rate by half. Ultimately, Proposition 9 failed at the polls in the November, 1980 election.
 
 
 4
 On February 20, 1980, Western Center requested a Special Needs Grant of $61,665 from LSC "to make effective the efforts of local legal services programs to assist their clients regarding Proposition 9...." On March 12, 1980, LSC awarded the $61,665 grant to Western Center. According to the appellants, members of Western Center created the Jarvis II Task Force to mobilize the resources, personnel, and equipment of legal services programs, including those of LAFLA and Western Center, for the purpose of defeating Proposition 9. The appellant's complaint alleges that LSC, Western Center, LAFLA, and the Jarvis II Task Force violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1961 et seq. (1982), and the California Political Reform Act of 1974, Cal.Govt.Code Sec. 81000 et seq. (West 1976) by fraudulently obtaining the Special Needs Grant and utilizing it for political activity. The complaint also alleges that LSC, Western Center, LAFLA, the Jarvis II Task Force, and Donald T. Regan violated the appellants' first amendment rights by enmeshing the federal government in the advancement of a partisan political cause.
 
 
 5
 The appellees filed a motion to dismiss the appellants' complaint. Pending a decision on that motion, the district court stayed all discovery and denied as moot the appellants' motion to compel discovery. Thereafter, the district court granted the appellees' motion to dismiss, holding that the appellants failed to state a cause of action under RICO and lacked standing to assert a claim under the first amendment.[1] The appellants filed a motion for reconsideration and leave to amend, which was denied by the district court. The present appeal followed.
 
 STANDARD OF REVIEW
 
 6
 On an appeal from the granting of a motion to dismiss, the complaint is to be construed in the light most favorable to the non-moving party. Electrical Construction & Maintenance Co. v. Maeda Pacific Corp., 764 F.2d 619, 620-21 (9th Cir.1985). To uphold such a dismissal, it must appear to a certainty under existing law that no relief could be granted under any set of facts that might be proved in support of the appellants' claims. Id.; Jones v. Community Redevelopment Agency of Los Angeles, 733 F.2d 646, 649 (9th Cir.1984).
 
 DISCUSSION
 I. Civil RICO Claim
 
 7
 The appellants claim that their complaint set forth a cause of action under RICO. Section 1964(c) establishes the basis for civil suits under RICO. It states in part:
 
 
 8
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor ... and shall recover threefold the damages he sustains....
 
 
 9
 In order to state a claim under section 1962(c), a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, and (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S. Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); Simon Oil Co. v. Norman, 789 F.2d 780, 781 (9th Cir.1986). In light of Sedima, proper emphasis must be placed on "pattern" as an independent component of a RICO claim. Sedima, 105 S.Ct. at 3285 n. 14. The facts alleged in the complaint do not constitute a "pattern" of racketeering activity and this deficiency is, in our view, dispositive of the RICO claim.[2]
 
 
 10
 Section 1962(c) renders unlawful the conduct, "through a pattern of racketeering activity," of the affairs of an enterprise engaged in, or whose activities affect, interstate commerce. Sections 1962(a) and (b) define other RICO-prohibited activity, each of which requires the common thread of a "pattern of racketeering activity." Section 1961(1) defines "racketeering activity" as any number of several enumerated illegal acts, including "any act which is indictable under ... [18 U.S.C.] Section 1341 (relating to mail fraud) ... and [18 U.S.C.] Section 1343 (relating to wire fraud)."
 
 
 11
 Section 1961 provides definitions and explanations of various terms used in RICO. As pointed out by the Supreme Court in Sedima, some of the terms are defined, such as "racketeering activity," "state," "racketeering investigator," and "racketeering investigation." Section 1961 specifies what each of these terms, as used in RICO, means. As to other terms, section 1961 merely specifies what is included within the meaning of each term. In explaining the use of the term, "pattern of racketeering activity," section 1961 specifies only what that term "requires." Section 1961(5) provides:
 
 
 12
 "[P]attern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.
 
 
 13
 In response to the criticism of RICO, the Court in Sedima stated that "[t]he 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses ... and the failure of Congress and the courts to develop a meaningful concept of 'pattern'." Sedima, 105 S.Ct. at 3287. Although the Court in Sedima did not rule on the pattern question in the case before it, the Court did elaborate on the meaning of "pattern" in plain and deliberate terms in footnote 14 of its opinion.
 
 
 14
 As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in Sec. 1961 in that it states that a pattern "requires at least two acts of racketeering activity," Sec. 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S.Rep. No. 91-617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern ...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also id., at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. Sec. 3575(e).
 
 
 15
 Id. at 3285 n. 14 (emphasis added).
 
 
 16
 Thus, the Court in Sedima stressed the importance of the finding of a "pattern of racketeering activity," as distinguished from just a finding of the commission of two of the predicate acts, in order to constitute a RICO violation. The Court indicated that in order to constitute a pattern, the two predicate acts must be related, not just isolated criminal acts. Furthermore, there must be some continuity to the criminal activity.
 
 
 17
 In this case, the alleged activity consists of fraudulently obtaining a federal grant with the intent to use it to campaign against Proposition 9 on the California ballot. Appellants have asserted three specific predicate acts. Each involves the manner in which funds were obtained. It is the acquisition of funds that constitutes the alleged criminal violations or predicate acts, according to plaintiffs, not the actual use of those funds. Thus, the question presented here is whether the requisite continuity and relationship implicit in the concept of "pattern" is established by this discreet activity, which has a distinct and easily defined beginning and end, even though supported by several alleged predicate acts of mail and wire fraud.
 
 
 18
 We have followed the circuits which do not limit the "pattern of racketeering" requirement to multiple schemes or episodes. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1469 n. 1 (9th Cir.1987); Sun Savings & Loan Ass'n v. Dierdorff, 825 F.2d 187, 191-94 (9th Cir.1987). Rather, in light of Sedima , we have framed the question as whether the acts are isolated or repeated and, if repeated, whether they pose a "threat of continuing activity." Id. at 193. In Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399 (9th Cir.1986), we held that in order to establish a pattern, there must be a threat of continuing activity, and that alleged acts of mail and wire fraud that led to only one shipment of goods did not meet the requirement of a pattern of racketeering activity. In Sun Savings we followed Schreiber, but distinguished it, finding that four predicate acts employed over several months to cover up a series of kickbacks constituted a "threat of continuing activity."
 
 
 19
 In this case, the appellants' complaint, liberally construed, alleged that Western Center, LAFLA, and the Jarvis II Task Force committed the predicate offenses of mail and wire fraud by misrepresenting to the LSC the intended use of the Special Needs Grant. The "pattern" here alleged is the appellees' scheme, through both mail and telephone communications, to misappropriate federal funds in opposing Proposition 9. Even if such a scheme existed and the mail and telephone were used to facilitate it, it was, at most, isolated and presented no threat of continuing. Although the alleged predicate acts of mail fraud and wire fraud were indeed related to that objective, this is not sufficient to constitute a pattern of racketeering activity.
 
 II. First Amendment Claim
 
 20
 The appellants seek injunctive relief on the ground that the legal services organizations' expenditure of federal tax dollars for the advancement of a private political cause constituted a violation of the first amendment.
 
 
 21
 We need not address the merits of the appellants' first amendment claim because, under the facts of this case, their claim for injunctive relief is moot. A cause of action becomes moot " 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (citations omitted). The election, which is the basis for the present controversy, was held several years ago. Clearly, the issuance of an injunction would not serve any remedial purpose, since the complained-of conduct occurred prior to the 1980 election. As we have stated, "[p]ast wrongs are not enough for the grant of an injunction.... On appeal there must be 'something more than whether the injunction should have been entered.' " Enrico's Inc. v. Rice, 730 F.2d 1250, 1253 (9th Cir.1984) (quoting Alyeska Pipeline Service Co. v. Int'l Brotherhood of Teamsters, 535 F.2d 1144, 1145 (9th Cir.1976)). Because there is no threat of real or immediate injury, the appellants do not allege the existence of a case or controversy that entitles them to injunctive relief.
 
 
 22
 An exception to the mootness doctrine applies to cases which are "capable of repetition, yet evading review." This exception is limited to cases where:
 
 
 23
 (1) [T]he challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.
 
 
 24
 Trustees for Alaska v. EPA, 749 F.2d 549, 555 (9th Cir.1984) (quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (per curiam)). This exception is a narrow one, and applies only in exceptional situations. City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983).
 
 
 25
 In order to apply the "capable of repetition" doctrine, there must be a reason to expect that there will be future litigation of the same issue between a present complaining party and a present defending party. Lee v. Schmidt-Wenzel, 766 F.2d 1387, 1390 (9th Cir.1985). Further,
 
 
 26
 the plaintiffs have the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity.... Specifically, the plaintiff must establish a demonstrated probability that the same controversy will recur involving the same litigants.... Speculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants as required by article III.
 
 
 27
 Id. We conclude that there is no reasonable probability that the same issues in this case will again arise in subsequent litigation between these parties.
 
 
 28
 The president of the Legal Services Corporation based his final order denying refunding to Western Center on Western Center's improper political activities. Both the statute, 42 U.S.C. Sec. 2996f(b)(6), and guidelines promulgated by the Assistant General Counsel for LSC prohibit use of LSC funds to support or conduct programs for the purpose of advocating particular public policies or encouraging political activities. Further, the Comptroller General of the United States prepared an opinion, based upon review of a speech given by a senior staff attorney for Western Center, which concluded that the activities undertaken by the Western Center and the Task Force "were the precise sort of activities that are prohibited by the statute's injunction." Given these facts and the LSC's disapproval of funding because of the political activities, it is unlikely that LSC would approve another "Special Needs" grant to Western Center and the Task Force to conduct similar political activities. Thus, the same challenged activity is unlikely to be repeated.
 
 
 29
 Finally, we find that not only have appellants failed to "establish a demonstrated probability" that the same controversy involving the same litigants will recur, appellants have not even made an allegation that they will be so injured in the future. Accordingly, we hold that the appellants' first amendment claim is moot.
 
 III. Procedural Claims
 A. Denial of Motion for Leave to Amend
 
 30
 The appellants first claim that, because they sought to amend their complaint prior to the filing of a responsive pleading, they were entitled to amend their complaint as a matter of right. Fed.R.Civ.P. 15(a). However, in the present case, a final judgment was entered on April 11, 1984, two days before the appellants sought to amend their complaint. Where a final judgment is entered following dismissal of an action, the plaintiff no longer has the right to amend the complaint as a matter of course. Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir.1984); Worldwide Church of God, Inc. v. State of California, 623 F.2d 613, 616 (9th Cir.1980). Under these circumstances, the appellants' amendment could be made only by leave of the court. 6 C. Wright & A. Miller, Federal Practice and Procedure, Sec. 1483 at 414 (1971).
 
 
 31
 A district court has discretion to grant or deny a motion for leave to amend. Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir.1983). In the present case, the district court denied the appellants' motion for leave to amend because it found that amendment would be futile, a recognized basis for denying a motion to amend. See Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1319-20 (9th Cir.1984).
 
 
 32
 The appellants' motion to amend was addressed solely to their RICO claim. In their motion, the appellants claimed that a defunding decision made by President Bogard of the LSC established that the legal aid organizations had engaged in a scheme to defraud the LSC. However, Bogard's decision was reversed by the United States District Court for the District of Columbia. Therefore, the proffered new evidence added nothing to the appellants' claim.
 
 
 33
 The district court did not abuse its discretion in denying the appellants' motion for leave to amend.
 
 B. Denial of Motion to Compel Discovery
 
 34
 On March 5, 1984, the district court filed an order, which stayed discovery pending the disposition of the motions to dismiss, on the ground that discovery was "not required to address the issues raised by defendants' motions to dismiss." A district court's decision to allow or deny discovery is reviewable only for abuse of discretion. Munoz-Santana v. INS, 742 F.2d 561, 562 (9th Cir.1984).
 
 
 35
 The district court did not abuse its discretion here. Discovery is only appropriate where there are factual issues raised by a Rule 12(b) motion. Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir.1984). A review of the district court's order dismissing the complaint indicates that the district court accepted the facts alleged by the appellants as true, but found them deficient as a matter of law. Therefore, since the appellants' complaint did not raise factual issues that required discovery for their resolution, the district court did not abuse its discretion in staying discovery pending a hearing on the motion to dismiss.
 
 
 36
 AFFIRMED.
 
 
 37
 PATEL, District Judge, concurring in the result:
 
 
 38
 I concur in the result reached in Judge Hug's opinion. However, as to the RICO claim, I do not believe it is necessary to put appellant's complaint through the consuming "pattern of racketeering activity" analysis under Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiffs cannot state a RICO claim for one clear reason. They were not injured in their business or property within the meaning of 18 U.S.C. Sec. 1964(c).
 
 
 39
 Injury to business or property does not include personal damages, Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir.1986), or political damages. RICO is intended to permit private actions solely for damages of a business or proprietary nature. See Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir.1984), vacated on other grounds, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985).
 
 
 40
 The injury allegations made here are strictly of a political and personal nature and, therefore, outside the purview of RICO. I would affirm for this reason alone.
 
 
 
 *
 The Honorable Marilyn Hall Patel, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Because the district court found that the appellants' complaint did not state a cause of action under federal law, it dismissed the pendent state law claims for lack of subject matter jurisdiction
 
 
 [2]
 We do not reach the question of whether the additional expenditure of appellants' funds, that the appellants contend was necessary to counteract the use of LSC funds for a campaign against Proposition 9, could constitute an injury to appellants' "business or property," as required for a claim under RICO