**MEDALLION TELEVISION ENTERPRISES, INC., John Ettlinger, Plaintiffs–Appellants,**

*v.*

**SelecTV OF CALIFORNIA, INC., James Levitus, Lionel Schaen, Richard Kulis, Defendants–Appellees.**

No. 86–5595.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 1987.

Decided Dec. 9, 1987.

As Amended Feb. 26, 1988.

Avery H. Einhorn, Beverly Hills, Cal., for plaintiffs-appellants.

J. Jay Rakow and Christina Snyder, Wyman, Bautzer, Christensen, Kuchel & Silbert, Los Angeles, Cal., for defendants-appellees.

Before SCHROEDER, NELSON and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Medallion Television Enterprises, Inc. and its owner John Ettlinger (collectively, "Medallion") appeal the district court's grant of summary judgment in favor of SelecTV of California, Inc. and its officers and directors Lionel Schaen, James LeVitus, and Richard Kulis (collectively, "SelecTV") in this civil suit under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). Medallion contends that the district court erred in determining, as a matter of law, that the various allegedly fraudulent acts committed by SelecTV did not constitute a "pattern of racketeering activity" under RICO, 18 U.S.C. § 1961(5). We affirm.

## I

Medallion and SelecTV are in the business of broadcasting and distributing television programs. Both believed that a professional boxing match between Muhammed Ali and Trevor Berbick that was to be held in December 1981 in the Bahamas provided the opportunity for a potentially lucrative broadcasting venture. Ettlinger obtained from the match promoter the right of first refusal to acquire the broadcast rights to the fight. Shortly thereafter, Ettlinger spoke by telephone with Schaen, the president of SelecTV, and arranged a meeting to discuss jointly acquiring and exploiting the telecast rights. At the meeting, Schaen allegedly misrepresented to Ettlinger that SelecTV had commitments from pay and cable television stations around the United States to pay a total of at least two million dollars to telecast the fight.

Several days later, Medallion and SelecTV entered into a joint venture to acquire the rights and to sell the telecast to pay and cable television stations. The joint venture purchased the rights from the Bahamanian fight promoter for a price in excess of two million dollars. SelecTV provided a corporate guarantee of payment for part of that sum, and Ettlinger obtained two letters of credit for more than one million dollars from his Chicago bank to cover the balance of the purchase price. Medallion later discovered that SelecTV did not in fact have two million dollars' worth of broadcast licensing agreements with television stations. The parties were unable to sell telecast rights to as many stations as they had anticipated, and both Medallion and SelecTV lost money in the joint venture.

Medallion filed this suit seeking to hold SelecTV responsible for its losses. The complaint alleged, among other things, that SelecTV's representations about the number of licensing agreements it had obtained had induced Medallion to enter into the

joint venture and to obtain the letters of credit, and that these representations constituted mail fraud, wire fraud, and interstate transportation of stolen property, in violation of 18 U.S.C. §§ 1341, 1343, and 2314, respectively. These, the complaint alleged, formed a "pattern of racketeering activity" rendering SelecTV liable for treble damages under the civil liability provisions of RICO, 18 U.S.C. § 1964(c). Medallion also alleged various pendent state claims.

After lengthy discovery and pretrial skirmishing, the district court granted SelecTV's motion for summary judgment on the RICO claims and dismissed the pendent state claims. *Medallion TV Enterprises, Inc. v. SelecTV of California, Inc.*, 627 F.Supp. 1290 (C.D.Cal.1986) [hereinafter *Medallion TV*]. The sole issue on appeal is whether the alleged acts of mail fraud, wire fraud, and interstate transportation of stolen property constitute a "pattern of racketeering activity." We agree with the district court that they do not.

## II

■ This court reviews de novo a grant of summary judgment and will affirm if the pleadings and supporting materials show the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) [hereinafter *California Architectural*], cert. denied, — U.S. —, 108 S.Ct. 698, 699, — L.Ed.2d — (1987).

Civil liability under RICO is premised on violation of one or more of the provisions of section 1962. 18 U.S.C. § 1964(c). The provisions at issue here are section 1962(b), which prohibits a person from acquiring or maintaining any interest in or control of an enterprise through a pattern of racketeering activity, and section 1962(c), which prohibits a person from participating in the conduct of the affairs of an enterprise

through a pattern of racketeering activity. 18 U.S.C. § 1962.

The district court determined that the joint venture was an enterprise and that the allegedly fraudulent acts could constitute racketeering activity within the meaning of RICO. *Medallion TV*, 627 F.Supp. at 1294–95; *see* 18 U.S.C. § 1961(1) and (4). The predicate acts that the court thought to have been alleged were wire fraud, in the form of telephone calls between Schaen and Ettlinger in which Schaen induced Ettlinger to meet to discuss forming the joint venture, and mail fraud and interstate transportation of stolen property, in connection with SelecTV's having caused Ettlinger to transfer the letters of credit from his Chicago bank to the Bahamas. *Medallion TV*, 627 F.Supp. at 1293–94. These determinations are not seriously contested on appeal. Accordingly, the only issue for us to decide is whether the predicate acts constitute a "pattern of racketeering activity."

What suffices to establish a pattern of racketeering activity has generated much discussion in the federal courts recently.[1] The number and diversity of opinions is due, at least in part, to the fact that RICO does not define the term; RICO states only that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court also has not spoken definitively on this question. It has suggested, however, in reliance on the legislative history, that "two isolated acts of racketeering activity do not constitute a pattern.... 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) [hereinafter *Sedima*] (quoting S.Rep. No. 617, 91 st Cong.,

---

1.  *See, e.g., Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191–92 (9th Cir.1987) (collecting cases); *California Architectural,* 818 F.2d at 1469 n. 1 (collecting cases); *Beck v. Manufactur-*ers Hanover Trust Co., 820 F.2d 46, 51 (2d Cir.), cert. denied, — U.S. —, 108 S.Ct. 698, — L.Ed.2d — (1987).

2d Sess. 158 (1969)) (emphasis added by the Supreme Court). The Court noted that the definition of pattern given elsewhere in the same bill could provide additional guidance: " 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* (quoting 18 U.S.C. § 3575(e)).

The articulation of a coherent definition of "pattern" is essential to the rational development of RICO law. The Court observed in *Sedima* that the extension of civil RICO to include many fraud claims may be attributable to "the failure of Congress and the courts to develop a meaningful concept of 'pattern.' " 473 U.S. at 500, 105 S.Ct. at 3287. Moreover, as Justice Powell suggested in his dissent in *Sedima,* a proper construction of the pattern requirement "could go a long way toward limiting the reach of the statute to its intended target—organized crime." *Id.* at 528, 105 S.Ct. at 3290 (Powell, J., dissenting). *See generally* Note, *Reconsideration of Pattern in Civil RICO Offenses,* 62 Notre Dame L.Rev. 83 (1986).

It is on this poorly mapped terrain that this circuit has, in recent cases, explored what constitutes a pattern of racketeering activity. *United Energy Owners Comm., Inc. v. United States Energy Management Sys., Inc.,* 837 F.2d 356, 360–61 (9th Cir.1988) [hereinafter *United Energy*]; *Jarvis v. Regan,* 833 F.2d 149, 152–153 (9th Cir.1987); *Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191–94 (9th Cir.1987) [hereinafter *Sun Savings*];

*California Architectural,* 818 F.2d at 1469; *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir.1986) [hereinafter *Schreiber*]; *see also Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 918 (9th Cir.1987) (per curiam) (finding pattern to be established without discussion of a general definition of pattern). Although we have not adopted *Sedima's* "continuity plus relationship" dictum as "a determinative two-pronged test," those factors are relevant considerations. *Sun Savings,* 825 F.2d at 192.

Whether the predicate acts alleged or proven are sufficiently related is seldom at issue, *see Sun Savings,* 825 F.2d at 192, and this case is no exception. There is no question that the predicate acts were related: all were directed toward inducing Medallion to enter the joint venture and to provide funds to obtain the telecast rights.

■ The presence or absence of continuity among the acts is the distinguishing factor in our cases and is the factor that most influences our decision in this case. Continuity does not require a showing that the defendants engaged in more than one "scheme" or "criminal episode." *United Energy,* 837 F.2d at 360. *Sun Savings,* 825 F.2d at 193–94; *California Architectural,* 818 F.2d at 1469. The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity. *Jarvis,* 833 F.2d at 153, *Sun Savings,* 825 F.2d at 193; *Schreiber,* 806 F.2d at 1399.[2]

■ Here, that threat is absent. This case involved but a single alleged fraud with a single victim. All of SelecTV's assertions about the number of licensing

2. Two cases we cited with approval in *California Architectural,* 818 F.2d at 1469 n. 1, are consistent with this analysis. The Second Circuit, in *United States v. Ianniello,* noted that it analyzes the relatedness and continuity elements in the context of the enterprise requirement rather than the pattern requirement. 808 F.2d 184, 189–91 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). The court found continuity in the context of a single fraudulent scheme involving repeated deceptive liquor license applications in successive years because the underlying profit-skimming scheme had no obvious terminating goal or date. *Id.* at 191–92. Similarly, the Eleventh Circuit found

the requisite pattern in allegations that as part of a single overall scheme, accountants provided, over a three-year period, numerous false financial statements that induced five banks to extend $60 million in credit to a firm that was on the verge of bankruptcy. *Bank of America Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 970–71 (11th Cir.1986). Both cases state that separate schemes or episodes are not necessary to establish a pattern. Both are consistent with our holding that the predicate acts must be part of an ongoing fraudulent scheme that poses a risk of continuing illegal activity.

agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights from the promoters. In essence, Medallion's allegations concern a single fraudulent inducement to enter a contract. Once the joint venture had acquired the broadcast rights, the fraud, if indeed it was a fraud, was complete. Medallion has not directed us to any evidence that SelecTV defrauded it in any other way as a part of this scheme or any other, nor is there anything in the nature of the transaction to suggest that SelecTV would have needed to commit any other fraudulent acts. Similarly, notwithstanding Medallion's unsupported assertions to the contrary, Medallion was the single victim of the alleged fraud.[3]

Thus, this case is substantially similar to *Schreiber,* in which we held that allegations that the defendant had fraudulently obtained a single shipment of goods to sell in violation of Schreiber's exclusive distributing agreement did not establish a pattern because there was no threat of continuing activity. 806 F.2d at 1399. *See also, Jarvis,* 833 F.2d at 153–54 (pattern requirement not satisfied by allegations that legal aid organizations committed three predicate acts of mail and wire fraud in obtaining a single federal grant to defray costs of opposing a ballot initiative). By contrast, in the cases in which we found the pattern requirement satisfied, the alleged predicate acts indicated a threat of continuing activity. In *Sun Savings,* the predicate acts consisted of four instances of mail fraud in which the defendant, who was Sun Savings and Loan Association's president and chief executive officer, sent letters to governmental agencies and to an outside auditor in an attempt to conceal a scheme in which he received kickbacks from customers for whom he approved large loans. 825 F.2d

at 190. The scheme posed a threat of continuing activity because it "covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme." *Id.* at 194 & n. 5. Similarly, in *California Architectural,* the complaint alleged that the defendant tile manufacturer repeatedly induced numerous plaintiff ceramic tile dealers to stock its tile based on false assurances that it would continue in business and would continue to supply tile when in fact it had decided to close. 818 F.2d at 1467. There were multiple fraudulent sales and multiple victims, and the alleged inducements continued for five months until the business finally closed. *Id.* at 1469. *See also United Energy,* 837 F.2d at 361 (holding that an open-ended fraudulent tax shelter scheme that continued over a sixteen-month period and that injured numerous customers and two thousand investors constituted a pattern of racketeering activity); *Televideo Sys., Inc.,* 826 F.2d at 918 (holding that thirteen acts of fraud related to ongoing scheme to embezzle company funds involving multiple victims established pattern of racketeering activity).

We are aware that in our recent *Sun Savings* opinion we expressed certain reservations about the district court's opinion in this case. 825 F.2d at 193. Our holding today is consistent with the views we articulated there. As we noted in *Sun Savings,* the district court's language in this case requiring that there be "separate criminal episodes" to establish a pattern can be interpreted in two ways. *Id.* at 193 n. 4 (construing *Medallion TV,* 627 F.Supp. at 1297). We suggested that if "episode" is construed to mean an act, event, or transaction, then the multiple episode requirement is consistent with our view that there

---

3. Medallion asserted in its brief and at oral argument that it was not the only victim. Medallion argues that a financier, Victor Sayyah, as well as the fight promoter and the TV stations were defrauded by SelecTV's false claims about the number of licensing agreements it had secured. Medallion later conceded, however, that the stations were not victims because they got everything they had bargained for—the

telecast of the fight. As for the other alleged victims, Medallion has pointed to no evidence, and neither we nor the district court found any, that anyone other than Medallion was a victim of this supposed fraud. From all that appears, the fight promoter got what it bargained for: it sold the telecast rights. Medallion has not presented any evidence to show that Sayyah was also a victim of the fraud.

must be more than a single act, event, or transaction to establish a pattern. 825 F.2d at 193 n. 4. If, however, an episode is taken to encompass a series of substantively related transactions, then multiple episode requirement would "unreasonably limit[ ] the ambit of RICO and overlook[ ] the Supreme Court's admonition that RICO be broadly read." *Id.* (citing *Sedima,* 473 U.S. at 497, 105 S.Ct. at 3286). Now that we have had the opportunity to subject both the district court's opinion and the record in this case to close scrutiny, we conclude that, regardless of the words chosen to describe the transaction involved in this case, the court properly determined that the pattern requirement has not been met. As discussed above, we are confronted here with a single, isolated, allegedly fraudulent inducement of Medallion to enter the joint venture to exploit the rights to telecast the fight. There was no pattern of racketeering activity.

Rather than attempting to distinguish between single "episodes" or "schemes" that may be a pattern, and single "events" or "transactions" that may not, we prefer to frame the inquiry as whether the acts are isolated or sporadic, on the one hand, or whether they indicate a threat of continuing activity, on the other. *See Sun Savings,* 825 F.2d at 194. Our approach admittedly does not provide a bright-line rule. We believe, however, that as more cases are decided, it will become easier to distinguish between cases like this and *Schreiber,* which involved single victims and isolated transactions with no indication that the defendant would need to commit further predicate acts, and cases like *Sun Savings* and *California Architectural,* which involved ongoing schemes, numerous victims, and a risk of continuing illegal activity.

Although there may be cases that present a close question on the pattern issue, this is not one of them. If the fraud alleged here constitutes a pattern of racketeering activity, rare would be the fraud that could not be pleaded as a RICO case. Although we observe *Sedima's* mandate that RICO be construed broadly, *see* 473 U.S. at 497, 105 S.Ct. at 3286, we cannot believe that Congress intended that RICO should apply to a single, isolated transaction such as this.

SelecTV's request for attorneys fees on appeal under Fed.R.Civ.P. 11 is denied. The judgment of the district court is

AFFIRMED.