**CASABLANCA PRODUCTIONS, INC., a Delaware corporation, Plaintiff,**

v.

**PACE INTERNATIONAL RESEARCH, INC., an Oregon corporation, dba Cameo Productions Group, Edwin T. Cornelius, Jr., Marsha Feltingoff, and Joseph Rothman, Defendants.**

**Civ. No. 88–347–MA.**

United States District Court, D. Oregon.

Oct. 23, 1988.

**1564**

Terry DeSylvia, Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland, Or., for plaintiff.

Don Marmaduke, Scott G. Seidman, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for defendants Pace International Research, Inc. and Cornelius.

Fred M. Aebi, Mary Chaffin, Ragen, Tremaine, Krieger, Schmeer & Neill, Portland, Or., for defendant Rothman.

## OPINION

MARSH, District Judge.

This is a securities action arising out of a "partnership agreement" between plaintiff, Casablanca Productions, Inc., and defendant Pace International Research, Inc. (PIRI), dba Cameo Productions Group. Defendants include PIRI; Edwin Cornelius Jr., PIRI's president; Marsha Feltingoff, plaintiff's former president; and Joseph Rothman.

Plaintiff's complaint sets forth four claims for relief. In its first claim, plaintiff alleges six counts: (1) Rule 10b–5 (15 U.S.C. § 78j); (2) Section 12(2) (15 U.S.C. § 77*l* (2)); (3) Oregon Securities Fraud (ORS 59.115 and 59.135); (4) Negligence; (5) Breach of Fiduciary Duty; and (6) Common Law Fraud. Plaintiff's second claim for relief is for breach of contract. Plaintiff's third claim for relief is for the sale of an unregistered security (ORS 59.055 and 59.165). Finally, in its fourth claim for relief plaintiff alleges a federal RICO claim (18 U.S.C. § 1962) as well as a state RICO claim (ORS 166.720).

Defendants PIRI and Cornelius move to dismiss on the basis of lack of subject matter jurisdiction and failure to state a claim. Defendants attached materials to this motion which if considered would require this court to treat the motion as one for summary judgment under Fed.R.Civ.P. 12(c). In its opposition, plaintiff also attached materials outside of the pleadings. Consequently, I consider defendants' motion as one for summary judgment. *See Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir.) *cert. denied* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985) (represented party who submits matters outside the pleadings has notice that judge may transform motion to dismiss into motion for summary judgment).

Defendant Rothman moves to dismiss on the basis of improper venue, lack of personal jurisdiction, lack of subject matter jurisdiction and for failure to state a claim. Defendant Rothman also incorporates the motion of PIRI and Cornelius into its motion. Plaintiff opposes the motion, incorporating its opposition to defendants PIRI and Cornelius' motion and also submitting other matters outside the pleadings. For the same reasons as set forth above, defendant Rothman's motion is treated as one for summary judgment.

Defendants' motions for summary judgment are granted on the following basis.

## STANDARDS

Summary judgment is appropriate if the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). There is no genuine issue of material fact where the nonmoving party fails "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986); *Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) *cert. denied* — U.S. —, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

All reasonable doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most

favorable to the party opposing the motion. Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. America,* 638 F.2d 136, 140 (9th Cir.1981).

## BACKGROUND

The "partnership agreement" between the parties concerns the development of English language educational programs on video programs, audio programs, and accompanying texts. The agreement, which was entered into on August 28, 1985, provides in part as follows:

WHEREAS, Cameo and Casablanca desire to ˋassociate themselves as partners for the purpose of jointly producing, developing and sharing in all revenues relating to the Products in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, the parties hereto hereby agree as follows:

1. Casablanca and Cameo hereby enter into a partnership known as Cameo/Casablanca Associates. Except as otherwise provided in this Agreement, the parties shall have the following interests in the profits and losses of the partnership:

| Cameo | 50% |
| Casablanca | 50% |

2. Cameo shall produce, and use its best efforts to maximize sales throughout the world of, the MBA Program (consisting of ten hours of broadcast quality video masters and ten hours of audio masters) and the C & O Program (consisting of twenty-one hours of broadcast quality video masters and twenty-one hours of audio masters) including all accompanying printed video guide materials in the form of finished manuscripts. In full payment for the production of the Products the partnership agrees to pay to Cameo the sum of $770,000 at such times and upon such conditions as herein provided for. Cameo shall furnish the partnership with monthly detailed progress reports of the development, creation and production of the Products. * * * If any monthly detailed progress report shows that work is thirty days or more behind the schedule set forth in Exhibit A, the partnership shall have the right to suspend any further payments required....

\* \* \* \* \* \*

5. Subject to Casablanca's obligation under paragraph 3 to contribute $770,000 to the partnership to be used for production of the Products, Casablanca and Cameo will share in all expenses of the partnership on an equal basis, provided, however, that no such expense shall be incurred without the prior approval of both Casablanca and Cameo.

\* \* \* \* \* \*

26. The funds of the partnership shall at all times be kept on deposit with a first-class bank maintaining a branch in Portland, Oregon. This account will be subject to withdrawal by Lawrence H. Blau and Marsha Feltingoff, only, until Casablanca receives its distribution of $770,000 under paragraph 6. Thereafter, this account will be subject to withdrawal by check signed by Lawrence H. Blau, Marsha Feltingoff and Edwin T. Cornelius, Jr. * * *

27. All contracts and other matters of the partnership (other than those in the ordinary course of business) including without limitation any sales, loans, mortgages or granting of security interests in property of the partnership shall require the signature of each party hereto.

28. All decisions of the partnership shall be by unanimous decision of the parties. The day-to-day affairs of the partnership shall be managed by such person or persons as the parties agree to.

## Securities Violations

■ Defendants contend that plaintiff's securities claims fail because plaintiff was a general partner and because plaintiff acknowledges that its own president, Marsha Feltingoff, had knowledge of the alleged fraud, "thereby negating the existence of any material misrepresentations and omissions."

Plaintiff argues that while general partnerships are usually not considered securities, the courts have found three exceptions to this rule: (1) when an investor has irrevocably delegated his powers to the promoter or manager; (2) when an investor is incapable of exercising his powers; or (3) when an investor is so dependent on the particular expertise of the promoter or manager that he has no reasonable alternative to reliance on that person.

Plaintiff contends that the first exception is applicable to the present case because "all management decisions were delegated to PIRI and all monies were committed to PIRI in the Cameo/Casablanca Agreement." Moreover, plaintiff contends that the third exception is applicable because Casablanca was dependent upon the expertise of defendants in carrying out the production of the videotaped programs and printed materials.

The parties agree that the starting point for determining whether plaintiff's investment is a security is *SEC v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In *Howey*, the Court held that investments in an orange grove, evidenced by a land sale contract, warranty deed and service contract, constituted an investment contract and thus a security. The Court defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely[1] from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise."[2] *Id.* at 298–99, 66 S.Ct. at 1102–03.

In *Deutsch Energy Co. v. Mazur*, 813 F.2d 1567, 1569 (9th Cir.1987), the court reiterated the *Howey* holding in a three part test: (1) an investment of money; (2) in a common enterprise; (3) based on an expectation of profits to be derived solely from the efforts of individuals other than the investor. *Deutsch* is also helpful because of its factual similarity to the present case.

*Deutsch* involved a corporation formed to acquire oil and gas producing properties. Plaintiffs, the investors, formed a "general partnership" with the corporation and lease rights were transferred to the partnership. Under the agreements which transferred those rights, plaintiffs, via their own corporation, "retained significant managerial powers." *Id.* at 1568. The court concluded that there was no genuine issue of material fact raised by plaintiffs' contention that their investment constituted a security. In so holding, the court stated that the third requirement of *Howey* was missing:

> Both parties rely on dicta from *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.) *cert. denied*, 454 U.S. 897, [102 S.Ct. 396, 70 L.Ed.2d 212] (1981). The *Williamson* court, in a well-reasoned opinion, said that "[a]n investor who is offered an interest in a general partnership or joint venture should be on notice ... that his ownership rights are significant, and that the federal securities acts will not protect him from a mere failure to exercise his rights." *Id.* at 422. The court identified as an exception to this rule a case where an investor "has irrevocably delegated his powers, or is incapable of exercising them, or is so dependent on the particular expertise of the promoter or manager that he has no reasonable alternative to reliance on that person."

1. In *SEC v. Glenn W. Turner Ent., Inc.*, 474 F.2d 476, 482 (9th Cir.) *cert. denied* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), the court noted that the term "solely" "should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities."

2. In *Pratt v. Kross*, 276 Or. 483, 497, 555 P.2d 765 (1976), the Oregon Supreme Court adopted a modified version of the *Howey* Test. The elements of this modified test are: (1) an investment of money (or money's worth); (2) in a common enterprise; (3) with the expectations of a profit; (4) to be made through the management and control of others. In light of the Ninth Circuit's "realistic" interpretation of the term "solely" (see footnote 1), the outcome of both tests is the same for the purposes of this case.

*Id.* at 422–23. The parties in this case appear to agree that DEC possessed, if not a general partnership interest, at least significant managerial powers under the purchase agreements. DEC claims, however, that it falls within the *Williamson* exception because the Deutsches' inexperience in the oil and gas business and their residence in California made them incapable of exercising any managerial powers over the drilling projects in Kansas. The undisputed facts, however, simply do not support their claimed lack of sophistication in financial affairs. * * *

*Id.* at 1570.

In *Williamson*, the issue addressed by the court was whether meaningful powers possessed by joint venturers under the joint venture agreement were enough to preclude a finding that their interests were securities regardless of the degree to which their powers were exercised. The court reviewed a number of cases addressing this issue and concluded that generally whether a partner or joint venturer remains passive despite significant managerial powers is irrelevant. The court went on to state:

> The delegation of rights and duties—standing alone—does not give rise to the sort of dependence on others which underlies the third prong of the *Howey* test. An investor who retains control over his investment has not purchased an interest in a common venture "premised on the reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others," even if he has contracted with the vendor for the management of the property. *So long as the investor retains ultimate control, he has the power over the investment and the access to information about it which is necessary to protect against any unwilling dependence on the manager. It is not enough, therefore, that partners in fact rely on others for the management of their investment; a partnership can be an investment contract only when the partners are so dependent on a particular man-*

*ager that they cannot replace him or otherwise exercise ultimate control.*

645 F.2d at 423–24.

Based on the foregoing, I conclude that while plaintiff may have been a passive partner, it nevertheless was a partner with significant managerial powers. This finding is based on the plain language of the agreement and on the evidence submitted by defendants that plaintiff in fact had sufficient business experience to enforce its partnership rights.

In this regard, I rely upon the declaration of Edwin T. Cornelius, Jr., which states that plaintiff's President Marsha Feltingoff, actively participated in the Cameo/Casablanca partnership and had substantial knowledge in the book and video publishing industry. Moreover, Lawrence Blau, Secretary and Treasurer of Casablanca, attests that he in fact attempted to enforce the partnership rights by forcing an accounting and getting copies of contracts signed by the partnership.

Accordingly, I conclude that plaintiff's interest in Cameo/Casablanca does not fall within the definition of an investment contract as set forth in *Howey* nor does it fall within the exceptions set forth in *Williamson.*

Plaintiff also suggests that its investment into Cameo/Casablanca might be considered an investment contract on the basis of the risk capital test. Plaintiff offers no evidence or argument in support of this position. Moreover, in *United States v. Carman*, 577 F.2d 556 (9th Cir.1978), the Ninth Circuit explained that the risk capital test is not employed unless one of the parties contend that the investment was actually a loan. Since no party makes such an assertion, it is not necessary to explicitly discuss the risk capital test. *Id.* at 563 n. 9.

Accordingly, defendants' motions for summary judgment as to plaintiff's state and federal securities claims are granted.

## RICO

Plaintiff alleges that defendants' "repeated acts" of securities fraud, mail fraud, and wire fraud in connection with

the sale of the Cameo/Casablanca investment contract amounted to a pattern of racketeering activity in violation of 18 U.S.C. § 1962.

Defendants move to dismiss this claim on the basis that "(1) [plaintiff] cannot plead the requisite 'pattern of racketeering activity' because its claim involves only a single investment in a general partnership; (2) [plaintiff] has failed properly to plead the existence of a RICO 'enterprise;' and (3) [plaintiff's] allegations that its President knew of the alleged misrepresentations and omissions negates the existence of any predicate acts of securities, mail or wire fraud."

### 1. "Pattern of Racketeering Activity"

■ The term "racketeering activity" is defined in 18 U.S.C. § 1961(1) to include mail fraud and wire fraud.[3] A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years. 18 U.S.C. § 1961(5). It is not necessary that the two or more acts be the same so long as each is connected with the other by some common scheme, plan or motive so as to constitute a pattern and so as to present a threat of continued criminal activity by the defendants. A series of disconnected acts is insufficient. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.E.2d 346 (1985).

Defendants contend that plaintiff's RICO claim fails to allege a pattern because it is based on an alleged misrepresentation to induce a single party to enter into a joint venture. Plaintiff argues that it was not the only "victim" of defendants' misrepresentations noting that "defendants succeeded in defrauding the State of Oregon and several other parties as well." Plaintiff also asserts that its allegations of fraud go beyond its initial investment into Cameo/Casablanca.

Several Ninth Circuit cases have addressed what constitutes a pattern of racketeering activity under *Sedima*. An examination of the cases illustrates a progressive refinement of the concept of continuity. In *Schreiber Distrib. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir.1986), the court held that a scheme to divert a single shipment of products did not establish the threat of continuing activity required by *Sedima*. In *Cal. Arch. Bldg. Prod.*, 818 F.2d at 1469, however, the court stressed that a pattern of racketeering activity could be found in a single criminal episode when multiple victims are involved. *See also United Energy Owners v. United Energy Management*, 837 F.2d 356 (9th Cir.1988). The court went on to characterize the requirement of continuity as dictum which it would not follow in the absence of additional explication by the Supreme Court. 818 F.2d at 1469.

In *Sun Savings and Loan Assoc. v. Dierdorff*, 825 F.2d 187 (9th Cir.1987), the court held that a corporate president could be held liable under RICO for writing four letters which sought to cover up a scheme in which he received kickbacks from corporate loan customers. Despite the court's apparent rejection of the *Sedima* dictum in *Cal. Arch. Bldg. Prod.*, the court discussed the "continuity plus relationship" language in *Sedima* at length:

> [T]he [*Sedima*] Court suggests that for purposes of 18 U.S.C. § 1962(c), a relationship exists among acts that have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics...."

*Id.* at 192.

The court reiterated that the requirement of continuity does not necessitate a showing of more than one fraudulent scheme or criminal episode. Instead, the court held that the requirement of "continuity" is satisfied if the predicate acts are not isolated or sporadic. *Id.* at 193–94. In finding that the threat of continuing activity existed, the court contrasted the case with *Schreiber*, 806 F.2d at 1393:

---

**3.** Because I conclude plaintiff's investment in Cameo/Casablanca is not a security, I do not consider plaintiff's allegation that the alleged securities violations constitute racketeering activity.

The two predicate acts in *Schreiber* did not pose a threat of continuing activity because they furthered the diversion of a single shipment of goods and appear to have occurred at nearly the same time, and because once those acts were complete, defendant had no further need to commit predicate acts. The four predicate acts in this case did pose a threat of continuing activity because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme.

825 F.2d at 194.

In *Jarvis v. Regan*, 833 F.2d 149 (9th Cir.1987), the court was presented with facts similar to *Schreiber*. In *Jarvis*, the plaintiff's RICO claim was based on the allegedly fraudulent acquisition of federal funds to use in a political campaign. *Id.* at 153. In concluding that there was no threat of continuing activity, the court stressed that the predicate acts involved the acquisition of funds and not the actual use of the funds. Consequently, the court held that the predicate acts were a "discreet activity, which [had] a distinct and easily defined beginning and end." *Id.*

Perhaps most factually similar to the present case is *Medallion Television Ent. v. SelecTV of Cal.*, 833 F.2d 1360 (9th Cir.1987). In *Medallion*, a joint venturer sued SelecTV on the basis that the losses suffered by the joint venture were attributable SelecTV. The plaintiff alleged that SelecTV had made representations which had induced it to enter into the joint venture and which constituted, *inter alia*, mail fraud and wire fraud.

The *Medallion* court held that the threat of continuing activity was absent because the case involved a single alleged fraud with a single victim.[4] *Id.* at 1363. As in *Schreiber*, the court noted that once the plaintiff was induced into the joint venture, the alleged fraud was complete. *Id.* at 1364.

Having reviewed the foregoing cases, I conclude that plaintiff has failed to estab-

lish that there is a genuine issue of fact as to whether defendants' alleged conduct constitutes a pattern of racketeering activity. I reach this conclusion for the following reasons.

Plaintiff's RICO claim, absent its securities fraud allegations, is expressly limited to mail and wire fraud "in connection with the sale of the investment contract in Cameo/Casablanca." This limitation is also expressed through its claimed damages of "not less than $770,000," the amount of its original investment. Consequently, I find this case most similar to *Schreiber, Jarvis*, and *Medallion*, in that the predicate acts involve a single alleged fraud on a single victim.

In so holding, I reject plaintiff's unsupported assertions in its memoranda that there were multiple victims. *See Medallion*, 833 F.2d at 1364. Similarly, I reject plaintiff's contention that an alleged kickback scheme involving defendant Feltingoff or an unauthorized sale of Cameo/Casablanca property supports a finding of a continuing threat in light of the fact that they are not alleged as predicate acts. Moreoever, plaintiff has failed to establish such acts would constitute predicate acts under 18 U.S.C. § 1961.

Accordingly, defendants' motions for summary judgment as to plaintiff's federal RICO claim is granted.

*State Pendent Claims*

█ In light of this court's dismissal of plaintiff's federal claims, I exercise my discretion in favor of dismissing the state pendent claims. *See Durham v. Kelly*, 810 F.2d 1500, 1506 (9th Cir.1987). In so doing, I conclude that this court also lacks diversity jurisdiction in light of plaintiff's failure to establish that its principal place of business is in a state diverse from all of the defendants. *See* 28 U.S.C. § 1331 (1982).

In summary, defendant PIRI and Cornelius's motion to dismiss # 9 and defendant Rothman's motion to dismiss # 12 are treated as a motions for summary judgment and are granted as to plaintiff's secu-

---

4. In concluding that only a single victim was involved, the court rejected plaintiff's "unsupported assertions" that it was not the only victim of the fraud. 833 F.2d at 1364.

rities claims and federal RICO claim. The motions are denied as moot as to the state pendent claims as this court declines to exercise pendent jurisdiction. Accordingly, this action is dismissed.