**OCCUPATIONAL-URGENT CARE HEALTH SYSTEMS, INC., a California corporation, Plaintiff,**

v.

**SUTRO & CO., INCORPORATED, a Nevada corporation, and Steven L. Merrill and Francis A. Martin, III, as the personal representatives of Claxton A. Long, deceased, Defendants.**

**Civ. No. S–88–0154 MLS.**

United States District Court, E.D. California.

April 21, 1989.

---

4. Because this action will continue, the court denies without prejudice defendants' motion for attorney's fees.

William P. Torngren, Attia, Bartel, Eng & Torngren, Sacramento, Cal. (Richard Wiener, Cadwalader, Wickersham & Taft, New York City, of counsel), for plaintiff.

Kenneth G. Hausman, Therese M. Stewart, Miriam R. Arfin, Pauline E. Calande, Howard, Rice, Nemerovski, Canady, Rob-

ertson & Falk, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

MILTON L. SCHWARTZ, District Judge.

This matter is before the court on defendants' motion to dismiss plaintiff's first amended complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and motion for a more definite statement and to strike immaterial allegations, pursuant to Federal Rule of Civil Procedure 12(e). These motions were heard on November 18, 1988, and at the conclusion of oral argument, the court ordered the matter submitted. The court having had the opportunity to fully consider the parties' respective positions, now renders its decision.

## I. BACKGROUND

Plaintiff, Occupational–Urgent Care Health Systems, Inc. ("OUCH"), is a publicly held company whose stock is traded over-the-counter. Defendant Sutro & Co., Inc. ("Sutro") is a registered securities broker-dealer, some of whose clients have investments in OUCH. Defendants Steven L. Merrill and Francis A. Martin, III are named as the personal representatives of Claxton A. Long ("Long"), who is deceased. Long, originally named as a defendant in plaintiff's complaint, was an employee and a senior vice president of Sutro who allegedly engaged in racketeering activity.

OUCH filed its original complaint in this court on February 1, 1988, alleging a violation of various provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b), (c) and (d), and pendent state law violations based upon interference with prospective economic advantage and slander. The action is based on a securities fraud scheme allegedly carried on by Long and several unknown co-conspirators. Sutro is named as a defendant because the alleged fraud was conducted by Long through use of Sutro's offices, telephones, stationery and other instrumentalities. In addition, OUCH also alleges that Sutro profited from Long's scheme through commissions on sales.

Long's scheme was, in essence, an attempt to realize a substantial profit by reducing the cost required to cover short positions on OUCH's stock. Plaintiff alleges that "defendants and others entered into a conspiracy, scheme or plan the purpose of which was to sell shares of plaintiff's stock short, to spread rumors and other untrue statements about plaintiff, to interfere with plaintiff's existing contracts and prospective contracts and to drive plaintiff out of business so that stock in plaintiff would become valueless or of very low value. Defendants and others would profit substantially by such conduct in that the costs of covering their short positions would be minimal." First Amended Complaint at 18:17–25. Long allegedly conspired with unidentified persons to effect this scheme of securities fraud through use of the mails, wires and other instrumentalities of interstate commerce.

Defendants brought a motion to dismiss and for more definite statement which was heard on June 10, 1988. Plaintiff's RICO claims were dismissed pursuant to Federal Rule of Civil Procedure 12(e) and its pendent state law claims also were dismissed under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The court did not rule on defendants' motion for more definite statement regarding the state law claims; however, plaintiff was counseled to consider the arguments raised by defendants respecting the pleading defects asserted. Plaintiff was granted 30 days leave to amend its complaint.

Plaintiff filed its first amended complaint on June 22, again alleging violations of RICO, this time sections 1962(a), (b) and (c), and pendent state law claims of slander and interference with prospective economic advantage. (The first amended complaint added a section 1962(a) count and did not reallege the original section 1962(d) claim of conspiracy.) Defendants again filed motions to dismiss the first amended com-

plaint and to strike immaterial allegations, which were heard on November 18, along with defendants' motion to disqualify plaintiff's counsel.[1]

## II. STANDARD OF REVIEW

A complaint may not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). In considering a motion to dismiss, the court must accept all material allegations of the complaint in question as true. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Moreover, in evaluating the complaint, the court is to construe the pleading in the light most favorable to the pleader and all doubts are to be resolved in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); *Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir.1980).

■ In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). Accordingly, a motion to dismiss tests the legal sufficiency of a complaint, not the weight of the evidence in support of it. *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2nd Cir.1980); *State of Oregon v. City of Rajneeshpuram,* 598 F.Supp. 1208, 1210 (D.Ore.1984) (citing 2A J. Moore & J. Lucas, *Federal Practice,* Para. 12.08 at 2265–67 (2d ed. 1984)).

## III. ANALYSIS

Plaintiff brings this action pursuant to RICO's civil remedies provision, 18 U.S.C. § 1964(c), which reads as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

RICO has liberal standing provisions, as evidenced by the above language. Any person alleging an injury to his business or property resulting from a pattern of racketeering activity violative of section 1962 may bring a private civil action. A RICO complaint is subject to dismissal, however, if the pleader does not properly allege the required "predicate acts." *See Schreiber Distributing v. Serv–Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986). A " 'pattern of racketeering activity' requires at least two acts of racketeering activity," the "predicate acts." 18 U.S.C. § 1961(5). The RICO statute lists racketeering activity as, *inter alia,* "wire fraud," "mail fraud," or "fraud in the sale of securities." 18 U.S.C. § 1961(1).

■ The predicate acts upon which plaintiff bases its RICO claims are wire fraud, mail fraud and fraud in the sale of securities. Upon consideration of defendants' previous motion to dismiss, it was determined that plaintiff had not sufficiently alleged the predicate act of securities fraud because it failed to allege that it was either a buyer or seller of its own securities. Because it lacked standing under the securities laws, it could not bring its RICO claims based upon that predicate offense. *See International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 151–54 (4th Cir.1987).[2]

---

**1.** The court denied defendants' motion to disqualify plaintiff's counsel in this case and in the related case, *Stiller v. Sutro & Co., Inc.,* CIV. S–88–0327 MLS, by order dated November 21, 1988.

**2.** In *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1469 n. 1 (9th Cir.1987), *cert. denied,* ___ U.S. ___, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), the Ninth Circuit declined to follow the Fourth Circuit's decision in *Zepkin,* but it did so for a separate proposition involving the issue of whether illegal acts pertaining to a single criminal episode constitute a "pattern of racketeering activity."

That defect has not been cured in the first amended complaint.

Defendants have raised an additional issue regarding the predicate acts alleged by plaintiff. They cite *Moll v. US Life Title Insurance Co. of New York*, 654 F.Supp. 1012 (S.D.N.Y.1987), for the proposition that plaintiff's fraud allegations are defective under Federal Rule of Civil Procedure 9(b) which requires that fraud be pleaded with particularity. The court in *Moll* dismissed the plaintiffs' complaint for failure to comply with Rule 9(b) and failure to adequately plead an enterprise under RICO. As the court there stated:

> The preponderance of plaintiffs' allegations in their complaints are made upon information and belief. [Citation omitted.] Plaintiffs must adequately specify the sources of their information and belief under Rule 9(b). [Citation omitted.] ... [T]o satisfy this requirement,
>
> "the sources of the information and belief should be sufficiently identified so as to allow each defendant and the Court to review the sources and determine, at the pleading stage, whether an inference of fraud may be fairly drawn from the information contained therein."

654 F.Supp. at 1035 (quoting *Crystal v. Foy*, [1981–82 Transfer Binder] Fed.Sec.L. Rep. (CCH) Para. 98,204 at 91,429, 1981 WL 1648 (S.D.N.Y.1981)). *See also Schreiber*, 806 F.2d at 1400–01 ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); and *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682 (N.D.Ga.1983) (RICO claims, like fraud, should be pled with particularity). Although Rule 9(b) requires specificity, it does not require pleading of evidentiary matter, and it does not excuse entirely compliance with Rule 8(a)'s requirement of pleading "a short and plain statement of the claim showing that the pleader is enti-

tled to relief." Fed.R.Civ.P. 8(a)(2); *Schmidt v. Herrmann*, 614 F.2d 1221, 1224 (9th Cir.1980); *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973) (quoting 2A J. Moore, *Federal Practice*, Para. 9.03, at 1930 (2d ed. 1972)).

■ Plaintiff's first amended complaint fails to comply with either Rule 8(a) or 9(b). It is a long and detailed listing of evidentiary matter interspersed with statutory language, and the factual allegations are, for the most part, pled on information and belief. With the exception of one instance of mail fraud, all other allegations of mail fraud are made upon information and belief. Regarding plaintiff's allegations of wire fraud, not only are all alleged interstate communications made upon information and belief, they are identified to have been made "by a Sutro registered representative," not claimed to have been defendant Long. Thus it would appear that on this basis alone, plaintiff's pleading is defective. Nonetheless, the court will address all other defects raised by defendants in order to determine whether or not to grant leave to amend.[3]

## A. Elements Common to All RICO Claims

Plaintiff alleges violations of subsections (a), (b) and (c) of section 1962 of RICO. All three subsections pinpoint prohibited activities relating to the conduct or acquisition of an interest in or control of an enterprise through a pattern of racketeering activity. Subsection (a) is aimed at preventing the use of racketeering income in the operation of, or investment in, an enterprise. The difference between a (b) and (c) cause of action is essentially that (b) targets instances of acquisition or maintenance of an *interest in or control of* an enterprise and (c) is aimed at *conduct or participation in* the affairs of an enterprise by persons

---

*Zepkin* was later cited with approval by the Ninth Circuit for the proposition that securities fraud must involve a sale of securities in order to qualify as a predicate offense under RICO. *See First Pacific Bancorp, Inc. v. L. William Bro*, 847 F.2d 542, 546 n. 10 (1988).

3. This analysis will be undertaken using plaintiff's mail fraud allegations since its allegations respecting the other predicate acts are so clearly deficient as to make the analysis more difficult, if not impossible.

employed by or associated with an enterprise.

■ The precise requirement for establishing a civil RICO cause of action depends on which subsection of the statute a plaintiff invokes; however, the following are essential elements of any civil RICO action: (1) the existence of a RICO "enterprise"; (2) the existence of a "pattern of racketeering activity"; (3) a nexus between the defendant and either the pattern of racketeering activity or the RICO "enterprise"; and (4) resulting injury to plaintiff, in his "business or property." *See Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D.Del.1987) (citing *Eaby v. Richmond,* 561 F.Supp. 131, 133–34 (E.D.Pa.1983)).

### 1. *"Enterprise"*

■ Regarding the first of these common elements, plaintiff alleges different enterprises for its subsection (a), (b) and (c) claims. Under (a) Sutro itself is alleged to be the enterprise,[4] and under (b) plaintiff alleges that it is the RICO enterprise, whereas under (c) the Feshbachs and Stockbridge Partners are identified as the "associated-in-fact" enterprise. "Enterprise" is broadly defined under section 1961(4) to "include[ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Plaintiff and Sutro qualify as enterprises under this definition, as well as the Feshbachs, Stockbridge Partners and the association-in-fact of those two enterprises.

### 2. *"Pattern of Racketeering Activity"*
### *(a) Predicate Acts*

■ In order to allege a pattern of racketeering activity, plaintiff must allege at least two "predicate acts" of racketeering activity. *Schreiber,* 806 F.2d at 1399. As stated above, the predicate acts alleged by plaintiff are mail fraud, wire fraud and fraud in the sale of securities. Securities fraud having failed to serve as a predicate act because of lack of plaintiff's standing

to assert it, plaintiff's allegations of mail and wire fraud must now be carefully examined for their sufficiency.

■ The Ninth Circuit requires that a violation of the wire fraud statute must involve "interstate wire communication." *See First Pacific Bancorp,* 847 F.2d at 547. Although plaintiff's complaint is full of references to interstate telephone calls made by a Sutro registered representative, that person is not otherwise identified. Rule 9(b) requires that the persons making any fraudulent statements must be identified. *Schreiber,* 806 F.2d at 1401 (citation omitted); *Moll,* 654 F.Supp. at 1034. Therefore, something more is required in order for plaintiff to properly allege wire fraud.

Plaintiff's complaint states general allegations that defendants used the mails in furtherance of their scheme; however, only one act not pled on information and belief is stated with particularity. That act is:

32. Sometime between August 1987 and October 16, 1987, Long caused to be sent to Hambrecht & Quist through the mails a memorandum on Sutro's stationery. Attached to the memorandum were 11 pages of materials from the California Insurance Code and California case digests which apparently had no relationship to plaintiff's business. The memorandum falsely implied the plaintiff was operating illegally. The memorandum's text was:

"Several insurance companies are paying [plaintiff] who in turn pays the provider of health services."

"This practice appears to be in violation of the California Insurance Code. A change in this procedure would severely limit cash flow."

First Amended Complaint at 16:3–13.

It was settled on defendants' last motion to dismiss that these allegations, in conjunction with at least one other related act of mail fraud, may be sufficient to state a claim based upon mail fraud since it is not required that the statements be made to

---

**4.** Under section 1962(a), in contrast to section 1962(c), the enterprise and the defendant may

be the same person or entity. *See Schreiber,* 806 F.2d at 1397–98.

plaintiff.[5] However, one predicate act is not sufficient. Plaintiff is required to plead at least two predicate acts with particularity. The other act of mail fraud which could have provided the proper basis for a RICO claim is stated in paragraph 33:

33. Plaintiff is informed and believes that in addition to the mailing described in paragraph 32, Long mailed materials through the United States Postal Service including with [sic] limitation:

(a) The memorandum described in paragraph 32 to plaintiff's potential customers and others and

(b) On November 30, 1987, the annual report of Mercantile Bank to Marks purportedly to show that plaintiff's bank was in a shaky financial position and that Marks and Meisel should doubt everything about plaintiff and its business.

First Amended Complaint at 16:14–23. The problem with the above allegations as pled is that they are made "on information and belief." Plaintiff must either plead facts or the source of its information in order to get over the initial hurdle of pleading the predicate offenses.

### (b) "Pattern" Requirement

Every element of pleading a RICO claim has given rise to a plethora of conflicting decisions; the pattern requirement is no exception in that regard. The Supreme Court's footnote on this issue in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), is responsible for fueling the controversy. That footnote reads in part:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports

the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

The Ninth Circuit has not adopted the "continuity plus relationship" language as a " 'determinative two-pronged test,' " but does regard it as a "relevant consideration[ ]." *Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir.1987) (quoting *Sun Savings and Loan Association v. Dierdorff,* 825 F.2d 187, 192 (9th Cir.1987)). The predicate acts alleged here are related in the sense that they had the same purpose of undermining plaintiff's reputation in the business community with the ultimate goal of affecting plaintiff's stock prices. The critical issue here, as in the majority of recent Ninth Circuit decisions on the issue, is whether the continuity factor is sufficiently clear. *See, e.g., Medallion,* 833 F.2d at 1363; *Jarvis v. Regan,* 833 F.2d 149, 153 (9th Cir.1987); *Sun Savings,* 825 F.2d at 193; *Schreiber,* 806 F.2d at 1399. The crucial inquiry is whether or not the acts indicate the threat of continuous activity or whether they are isolated acts. Also relevant to this inquiry is whether or not the alleged scheme has multiple victims or only a single victim. *See, Medallion,* 833 F.2d at 1363–64.

Because plaintiff has properly pled only one predicate act of mail fraud, the court need not reach the issue whether this act is sufficient to constitute a "pattern" of racketeering activity since at least two related acts are required.

---

5. This assumes that the two acts together evidence a threat of continuous activity sufficient to satisfy the pattern requirement for pleading a RICO claim.

### 3. *Injury to Plaintiff*

Plaintiff's first amended complaint states the following as the injury to its business or property by reason of a violation of section 1962:

> As a direct and proximate result of the acts and conduct of Long and Sutro, plaintiff has been injured in its business or property within the meaning of 18 U.S.C. section 1964(c) in that, among other things, it lost customers and potential customers, encountered difficulties and added costs and expenses in negotiating with potential customers, encountered difficulties and added costs and expenses in increasing the volume of business done with existing customers, and suffered a diminution in its reputation and business. These damages will be for an amount to be proven at trial, but not less than $4,500,000, said damages to be trebled to $13,500,000 under 18 U.S.C. section 1964, together with interest, costs and attorneys' fees.

First Amended Complaint at 27–28. Defendants contend that this injury is not redressable under RICO because plaintiff alleges harm resulting from short selling, which is not criminal activity. The adequacy of these allegations will be discussed below in relation to each specific RICO claim.

### B. *Section 1962(a): Use or Invest*

■ Plaintiff's first cause of action alleges a violation of section 1962(a) of RICO, which reads in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise....

18 U.S.C. § 1962(a).

Defendants contend that plaintiff has not stated a claim upon which relief can be granted based on a section 1962(a) violation because it has not alleged that the defendants received income from the alleged pattern of racketeering activity which was used in the operation of an enterprise. Moreover, they claim that plaintiff has not alleged that it was injured by reason of use of these proceeds in the operation of Sutro, the alleged enterprise.

Plaintiff states that it need not allege injury caused by use of the racketeering proceeds in the operation of the enterprise. Although it is by now well settled that no racketeering injury distinct from the harm caused by the predicate offenses need be alleged for a section 1962(c) claim, *see Sedima* and *Schreiber,* the Ninth Circuit has only implicitly extended this principle to subdivision (a) and (d) violations. *See Wilcox v. First Interstate Bank of Oregon, N.A.,* 815 F.2d 522 (9th Cir.1987).

In *Wilcox,* the Ninth Circuit reversed the lower court's grant of summary judgment in the defendant's favor on the plaintiff's sections 1962(a), (c) and (d) claims. The court did not separately address any of these claims when discussing the issue of "racketeering enterprise injury," however, it stated that:

> The Supreme Court recently expressly rejected the "racketeering enterprise injury" rule relied on by the district court.... The Court emphasized that a plaintiff still must allege each element prescribed in the statute to state a claim. The statute, however, requires no more. The compensable injury is the harm caused by the predicate act relied upon.

815 F.2d at 529 (citations omitted). In making these statements without distinguishing between the types of claims, the court implicitly extended *Sedima's* express rejection of a separate racketeering injury for subsection (c) claims to the plaintiff's subsections (a) and (d) claims.

The problem here is that plaintiff has, quite understandably, confused "racketeering injury," which in this case it labels "investment injury," with the requirement that it allege that defendants derived income from the predicate acts which they used to operate the enterprise. In terms of injury, plaintiff need only allege that it was harmed by the predicate acts; however,

there must still be a connection between the predicate acts and operation of an enterprise. Thus, the defendants are correct in stating that plaintiff must show that they derived income from the mail fraud activities, and used it to operate Sutro, even though they are incorrect in stating that use of the income, rather than the predicate acts alone, must be the source of plaintiff's injury.

While the language in *Sedima* is not readily susceptible of immediate comprehension, especially when trying to discern just what a "racketeering injury" is and how it is to be distinguished from injury caused by the predicate acts, the following appears to illustrate that a connection between the predicate offenses and conduct or operation of the enterprise must be adequately alleged. Although this language describes the requirements for pleading a section 1962(c) claim, for this purpose, it is equally applicable to pleading a section 1962(a) claim.

A violation of § 1962(c), the section on which Sedima relies, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 ([7th Cir.]1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 [1985].

But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to con-

stitute a pattern, for the essence of the violation is the commission of those acts *in connection with the conduct of an enterprise* . . . .

*Sedima,* 473 U.S. at 496–97, 105 S.Ct. at 3285 (footnote omitted) (emphasis added).

What plaintiff here attempts to do is to eliminate the requirement of a connection between the mail fraud activities and operation of the enterprise. However, to do so would mean using RICO in a way other than Congress intended. The statute is aimed at preventing enterprises from being run in whole or in part by way of criminal activity. What the courts have sought to do in cases like *Sedima* is to establish that the statute has a broader scope than racketeering activity carried on by mobsters or groups participating in organized crime. In that sense, it seems perfectly permissible and legitimate for RICO to be used in the type of case where a business which has an existence separate from racketeering activities nonetheless profits from such illegal activity. However, as some courts have said, because RICO carries such a heavy stigma, plaintiffs must be required to plead facts which demonstrate that an enterprise, particularly one not generally regarded as illegitimate, has in fact been infiltrated by persons engaging in racketeering activity.

Plaintiff identifies the following elements, taken from *Schreiber,* as the only required elements for pleading a section 1962(a) claim: that defendants "(1) engaged in the predicate acts of racketeering; (2) received income from the pattern of racketeering activity; and (3) used that income in their operations. . . ." 806 F.2d at 1398. The problem still remains, however, that it has not alleged any of these elements. Even if plaintiff amended its complaint to allege the predicate acts with particularity so that it could satisfy the first element above, it must still allege that defendants received income from those acts, its mail fraud activities, which it used to operate Sutro. Plaintiff appears to believe that it can get by with pleading generalized harm to its business. That is not enough; it must plead that the harm resulted from

the predicate acts and it must also plead that income was derived from those acts and was used to operate Sutro. The income cannot be derived only from defendants' overall scheme or plan, but must come from the pattern of racketeering activity.

What plaintiff does allege is that defendants obtained income from short selling plaintiff's stock, which income was used to operate Sutro. The big problem here is that short selling does not qualify as racketeering activity. Accordingly, plaintiff's section 1962(a) claim is subject to dismissal.

### C. Section 1962(b): Interest or Control

Plaintiff's second cause of action is brought under section 1962(b), which prohibits the maintenance or acquisition of an interest in or control of an enterprise through a pattern of racketeering activity. The statutory provision reads:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b). In order to maintain a cause of action under this subsection, plaintiff must allege that defendants' activity caused them to acquire or maintain an interest in, or control of plaintiff.

In spite of the court's dismissal of this claim on defendants' previous motion to dismiss, plaintiff realleges the same claim in the same manner, and makes the same arguments it made earlier for the sufficiency of its allegations. Defendants once again contend that plaintiff fails to satisfy the requirement that it allege acquisition or maintenance of an "interest" or "control" because short selling stock is not only legal, it confers no incidents of ownership or control of the enterprise's stock, let alone the enterprise itself. They cite *Provost v. United States*, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352 (1926), a case which thoroughly discusses short sales and which supports their claim that short selling in and of itself cannot confer either a proprietary interest or control of an enterprise since the short seller never actually owns the stock. *Id.* at 455, 46 S.Ct. at 154.

Plaintiff concedes the legality of short selling, but argues that it does confer an interest within the meaning of the statute since that term has received a broad judicial construction. Plaintiff also maintains that defendants used short selling in a fraudulent manner to perpetrate a securities fraud. Plaintiff again cites *Cincinnati Gas & Electric Co. v. General Electric Co.*, 656 F.Supp. 49 (S.D.Ohio 1986), and *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648 (7th Cir.1984), to support its position that interest or control is broadly defined. The "interest" plaintiff identifies is that defendants had an interest in OUCH because they were required to later buy OUCH stock to cover their short positions. Because defendants are in some way interested in plaintiff's stock does not mean that they have a proprietary interest in plaintiff.

Moreover, neither *Sutliff* nor *Cincinnati Gas* supports plaintiff's argument that interest or control was broadly construed in either of those two cases. Although the court in *Sutliff* did say that "control within the meaning of the statute need not be formal—need not be the kind of control that is obtained, for example, by acquiring a majority of the stock of a corporation," 727 F.2d at 653 (citation omitted), the defendants had at least acquired some form of control of the enterprise by exercising undue influence over Mrs. Sutliff, who operated plaintiff, Sutliff, Inc. Mrs. Sutliff was psychologically incapacitated and defendants "inveigled [her] into selling oil to [them] below its cost." *Id.* Thus, for all practical purposes, defendants were indirectly running the company. Nothing approaching that level of control has even been alleged here.

Similarly, in *Cincinnati Gas*, the alleged "interest or control" consisted of defendant's voting rights in the enterprise and its direct involvement in the management of the enterprise. 656 F.Supp. at 85. Neither of these cases indicates that interest

or control can be so broadly defined as to encompass the remote effect defendants' activities allegedly had on plaintiff's business.

This cause of action must again be dismissed.

### D. Section 1962(c): Conduct or Participation

Defendants challenge plaintiff's section 1962(c) cause of action on the ground that plaintiff has not sufficiently alleged conduct of, or participation in, the enterprise's affairs by defendants. The enterprises alleged under this count are: (1) the association-in-fact of the Feshbachs, (2) Stockbridge Partners, and (3) the association-in-fact of the Feshbachs and Stockbridge Partners, short sellers of plaintiff's stock. Defendants contend that plaintiff's pleading is deficient because it has not alleged the degree of participation or conduct of the enterprise by either Long or Sutro sufficient to state a violation of section 1962(c). Further, plaintiff has not alleged a nexus between the racketeering activity and the activities of the enterprise.

Plaintiff's allegations are inadequate on both counts. Aside from plaintiff's conclusory allegation in paragraph 76 that "Long and Sutro participated in the conduct of the affairs of the enterprises ... through a pattern of racketeering activity ...," see First Amended Complaint at 33:10–12, its earlier allegations in paragraphs 72 and 73 merely state that Long and Sutro were "associated with" the enterprises in that they "knew or should have known of their existence and the nature of their activities." First Amended Complaint at 32. In the case of Long, plaintiff further alleges that he "purported to speaking [sic] for them along with others, that he claimed that they would compensate him for his efforts ..., and that he joined in their shorting plaintiff's stock." First Amended Complaint at 32:5–8. Whatever else these allegations may support, they do not support a claim that Long and/or Sutro participated in the conduct of the enterprises' affairs through mail fraud. Even assuming Long and these enterprises engaged in the common activity of selling plaintiff's stock short, this does not indicate that Long "participat[ed] in the operation or management of the[se] enterprise[s]...." Bennett v. Berg, 710 F.2d 1361, 1364 (8th Cir.), cert. denied, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983) (citation omitted).

Defendants also contend that there is no nexus between the racketeering activity and these enterprises. In fact, although plaintiff's mail fraud allegations are related to the common scheme or plan, they bear no relationship to the activities of the Feshbachs and Stockbridge Partners. As the Ninth Circuit stated in Sun Savings:

> Under this "connection" or "nexus" requirement, the racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise. As stated by the Second Circuit in United States v. Scotto, 641 F.2d 47 (2d Cir.1980), cert. denied, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), a nexus exists "when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of the enterprise." Id. at 54. In the present case, the connection requirement is satisfied if Dierdorff was able to commit the fraud by virtue of his position with or work for Sun or if the fraud was related to Sun's business.

825 F.2d at 195. Plaintiff cannot satisfy the nexus requirement by alleging the Feshbachs and Stockbridge Partners as the enterprises. "[W]hen the predicate acts are unrelated to the enterprise or the actor's association with it [ ] the nexus element is missing, and consequently there is no RICO violation." United States v. Provenzano, 688 F.2d 194, 200 (3rd Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982).

There are only two possible ways plaintiff could satisfy the nexus requirement for a section 1962(c) claim. One way is by naming Sutro as the enterprise, but this would mean dropping it as a defendant

along with any hope of recovering treble damages.[6] The other way is for plaintiff to allege itself as the enterprise. This would satisfy the nexus requirement under the second option stated in *Scotto* since the predicate acts are related to plaintiff's activities; however, it would not support a 1962(c) violation because plaintiff probably cannot allege that defendants "participat[ed] in the operation or management of [plaintiff] itself." *Bennett,* 710 F.2d at 1364. Accordingly, this claim should also be dismissed.

### E. *State Law Claims*

The court will discretionarily dismiss plaintiff's pendent state law claims without considering them on the merits now that the federal claims are no longer a part of this action.[7] *See United Mineworkers,* 383 U.S. at 726, 86 S.Ct. at 1139.

### F. *Leave to Amend*

Denial of leave to amend is strictly reviewed by the appellate court for an abuse of discretion after a responsive pleading has been filed. *See Jones v. Community Redevelopment Agency,* 733 F.2d 646, 650 (9th Cir.1984). Plaintiff has amended its pleading once, but no responsive pleading has yet been filed in this case. Federal Rule of Civil Procedure 15(a) states that leave to amend pleadings "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a). However, the Ninth Circuit has clearly stated that "futile amendments" will not be allowed. *Jones,* 733 F.2d at 650 (citation omitted).

The court in *Jones* considered whether that plaintiff should have been given the opportunity to file a second amended complaint. The court had before it the plaintiff's proposed second amended complaint which it reviewed and determined was "of little more merit than the first amended complaint." *Id.* The court therefore af-

firmed the district court's denial of leave to amend.

This court here faces the same issue whether further amendment of plaintiff's pleadings will be futile. It does not need to have a proposed second amended complaint before it to be able to predict its futility. Plaintiff's first amended complaint cured none of the defects of its original complaint, and in certain instances repeated some of the same allegations previously determined to be deficient. Accordingly, dismissal shall be without leave to amend.

## IV. CONCLUSION

In light of the foregoing, IT IS ORDERED that plaintiff's first amended complaint is dismissed without leave to amend.

---

6. Plaintiff already faced this particular decision after the court dismissed its complaint. Sutro was originally named as the enterprise under this cause of action and as a defendant. After the court dismissed plaintiff's section 1962(c) claim on the ground that Sutro could not be both the enterprise and the defendant, plaintiff

decided in favor of naming an enterprise other than Sutro when it amended its complaint.

7. Consequently, the court need not address defendants' motion for a more definite statement and to strike immaterial allegations brought under Federal Rule of Civil Procedure 12(e).