960 F.2d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John D. TURNER, Plaintiff/Appellant,
v.
FINANCIAL CORPORATION OF AMERICA, et. al. Defendants/Appellees
 No. 90-15847.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 20, 1991.
Decided Feb. 21, 1992.
 
 Before D.W. NELSON, NOONAN and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John D. Turner appeals from the grant of summary judgment in his securities fraud, RICO and common law action against defendants/appellees. The district court's order granting summary judgment is affirmed.
 
 I. Facts and Procedural Background
 
 3
 During the period between April 1986 and 1987, Turner purchased 90,000 shares of Financial Corps. of America (FCA) stock at a cost of $816,125. FCA was later taken over by federal regulators. Turner lost substantial amounts of money and attributes these losses to alleged fraudulent misrepresentations and omissions by FCA, certain officers and directors, American Savings and Loan Association ("American"), a subsidiary of FCA, and the outside accountants, KPMG Peat Marwick ("Peat Marwick").
 
 
 4
 Before buying stock in 1986, Turner reviewed FCA's 1985 10-K, which revealed several financial problems: 1) loan loss reserves had been increased by $422 million as of the end of 1984 and by $182 million as of the end of 1985, 2) the loan portfolio was being investigated, and 3) FCA was being sued in various shareholder class action suits arising out of the activities of the management which headed the company until 1985. Those suits were subsequently settled for between $32 and $42.7 million. Several stock reporting services, including one that Turner subscribed to, reported FCA as a "risky investment," giving it the "lowest safety rating."
 
 
 5
 After ordering that Turner's deposition be taken to flesh out his claims for reliance on the alleged misrepresentations, the district court granted defendants'/appellees' motion for summary judgment. The district court found that there were no genuine issues of material fact as to whether material misrepresentations existed or on the issue of Turner's reliance on any alleged misrepresentations. Summary judgment was also granted on the RICO claims under 18 U.S.C. §§ 1961-1968.
 
 II. Discussion
 1. Turner's Deposition
 
 6
 Turner alleged that the district court abused its discretion in ordering that his deposition be taken instead of allowing him to amend his complaint. Trial courts have broad discretion in promoting efficient and equitable case management. See, In re Fine Paper Antitrust Litigation, 685 F.2d 810, 817 (3rd Cir.1982), cert. denied, 459 U.S. 1156 (1983). The trial court did not abuse its discretion by ordering Turner's deposition taken instead of granting summary judgment based upon the pleadings.
 
 2. Summary Judgment
 
 7
 We review de novo the district court's decision to grant summary judgment. In re Apple Computer Securities Litigation, 886 F.2d 1109, 1112 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3229 (1990). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.Rule Civ.Pro. 56(c); In re Apple Computer Securities Litigation, 886 F.2d at 1112 (quotations omitted). To establish his claims, appellant must prove "materiality" and "reliance." These issues can be resolved by summary judgment "where there can be but one reasonable conclusion" as to the facts. In re Apple, 886 F.2d at 1112-13.
 
 A. Material Misstatements
 
 8
 Turner claims that FCA President Popejoy made material misstatements in his press releases and the company's 10-K's and 10-Q's filed with the Securities & Exchange Commission (SEC). He points to statements such as "we're out of harms way" as potentially misleading.
 
 
 9
 In Virginia Bankshares, Inc. v. Sandberg, 111 S.Ct. 2749 (1991), the Supreme Court held that knowingly false statements of reasons, opinion, or belief, even though conclusory in form, may be actionable under § 14(a) of the Williams Act as misstatements of material fact within the meaning of Rule 14(a)-9. Id. at 2755. Although Virginia Bankshares was written in reference to misstatements made in a proxy statement, and thus actionable under § 14(a), we assume for our purposes that this analysis is equally applicable to claims made pursuant to § 10(b) for material misstatements of fact. See, Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). In Basic, the Supreme Court expressly adopted the standard of materiality set out in the § 14(a) context as applicable to the § 10(b) context. Id.
 
 
 10
 The actionable false statements in Virginia Bankshares regarded a freeze out merger where the directors stated, in a proxy statement, that the value of the stock was high and the price was fair. The Court established a new standard for materiality, stating that "not every mixture with the true will neutralize the deceptive. If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow." Id. at 2760.
 
 
 11
 The statements that Turner claims are materially misleading are Popejoy's opinions or beliefs regarding the present and future of FCA. That kind of statement may be actionable if knowingly false. In Virginia Bankshares, the Court found that the directors held out $42 per share as a fair price, even though they knew the shares were worth $60. This case is not so simple, because in making his optimistic statements regarding FCA, Popejoy may have really believed that what he was saying was true.
 
 
 12
 Even if we assume that the statements were knowingly false, Turner's claim fails because he was exposed to such a morass of contrary information that it was not reasonable for him to rely solely on Popejoy's optimistic statements as evidence that all of the other available information was inaccurate. Reliance requires demonstration of a causal connection between a defendant's misrepresentation and a plaintiff's injury. Basic, Inc. v. Levinson, 485 U.S. 224, 243 (1988). Reliance by investors, on publicly available information is presumed for purposes of a Rule 10b-5 action. Id. However, this presumption may be rebutted by "any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." Id. at 248. Additionally, the presumption may be rebutted when investors would have acted in the same manner had they not relied on the integrity of the market. Id. at 249.
 
 
 13
 The causal connection between Popejoy's statements and Turner's purchases and losses is missing in this case. At the time of Popejoy's statements, the papers were filled with news of FCA's financial difficulties and its previous unsound lending practices. In 1985 the New York Times called FCA "the most explosive, speculative stock on the New York Exchange." Thomas C. Hayes, Financial Corp.'s Climb Back, New York Times, Oct. 9, 1985, at D1, cited at ER 20.
 
 
 14
 The articles that Turner points to as being misleading because of their optimistic statements also include negative information and caution careful evaluation. For example, the article that Turner used to show alleged misstatements identifies the problems with FCA. The article read, "[t]he company is out of danger, but still about three years away from being financially sound ... potential decreases in real estate values, however, could still result in increased additions to the reserves in the fourth quarter." Mark Basch, Financial Corp.'s Popejoy Upbeat About Thrift's Future Health, American Banker, Sept. 22, 1986, cited at ER 47. And, in Business Week, which calls FCA "Financial Corpse of America," Popejoy is quoted as fretting, "I hope expectations aren't getting too high." Teresa Carson, FCA Still Has to Live Up to Its Stock Price, Business Week, Mar. 10, 1986, at 34, cited at ER 4.
 
 
 15
 In Virginia Bankshares, the shareholders relied on the knowledge and expertise of those who appraised the stock in voting for the merger. Virginia Bankshares, 111 S.Ct. at 2757. There was no evidence that the investors were confronted with any contrary information from any outside authority, including the press. Here, Turner himself was inundated with information directly contrary to FCA's press release asserting that it was "out of harms way." He admitted to reviewing the 10-K, which revealed several financial problems, as well as subscribing to several stock reporting services which gave FCA the lowest safety rating as a risky investment.
 
 
 16
 The district court found that Turner did his own detailed financial analysis using Lotus 1-2-3 spreadsheets and was following the company closely. Turner's analysis and his knowledge about FCA's financial difficulties is sufficient to support the district court's judgment that reliance had not been established. Basic, Inc., 485 U.S. at 249. Thus, even if the statements are misleading, Turner could not have reasonably been influenced by them in light of the inconsistency in the total mix of information available to and utilized by Turner at the time.
 
 B. Material Omissions
 
 17
 Turner also alleges that FCA failed to disclose the inadequacy of its loan loss reserves. However, the 1985 10-K disclosed the increase of loan loss reserves by $422 million in 1984 and $182 million in 1985. It also stated that FCA was still reviewing the loan portfolio. The press reported that loan loss reserves were expected to be raised. This information indicates the tremendous need to set aside funds for loan losses and that the company anticipated and made it known to the market that additional losses, and thus additional loss reserve funds, might be necessary. Turner also admitted in his deposition that he "can't point to something [in the 1985 10-K] and say its a misstatement." The district court did not err in concluding that no material omission occurred.
 
 
 18
 Turner also challenges FCA's failure to disclose the Proof of Loss statement the company filed with its insurance company to cover some of its bad loans. The Proof of Loss statement speaks of unsound lending practices which led to loans which could not be paid back and made FCA vulnerable to interest rate fluctuations. Although the document was not disclosed to the public, Turner pointed to no material information contained in the Proof of Loss which should have been disclosed. In his deposition, he was asked: "Is there anything that's raised in the proof of loss financially, numbers, dollars and cents, that isn't reported in this 10-K?" Turner responded, "No ... As far as I'm aware." The previous management's unsound banking practices were much discussed in the press and mentioned in the 1985 10-K. The need for loan loss reserves to compensate for these bad loans was also documented in the official statements of the corporation.
 
 
 19
 An omission is material if disclosure of the omitted statement would have altered the total mix of information available to the reasonable investor. Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). There is no evidence that disclosure of the Proof of Loss statement would have altered the mix of information available since the information it contained was already available in the 10-K and in the press. Accordingly, the failure to disclose this information was immaterial.
 
 
 20
 Turner also alleges fraud stemming from the failure to disclose the potential sale of FCA to the Federal Home Loan Bank Board (FHLBB). Yet the fact that FCA was a takeover candidate was well documented in the press. Popejoy had also told American Banker in September 1986 that he would welcome discussion with possible merger partners who could infuse much needed capital into the company. Mark Basch, Financial Corp.'s Popejoy Upbeat About Thrift's Future Health, American Banker, Sept. 22, 1986, cited at ER 47. In fact, Turner admitted in his deposition that FCA's potential as a buy-out candidate was one of the reasons he bought 50,000 shares of stock in June 1986. Any failure of disclosure was immaterial because the information was already publicly available.
 
 
 21
 Similarly, Turner claims that FCA should have disclosed that Peat Marwick's 1985 unqualified audit opinion was premised upon the FHLBB providing a letter of support. Turner does not argue this claim on appeal and has therefore abandoned it. Cross v. State of Washington, 911 F.2d 341, 345 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1313 (1991). Additionally, the letter of support from the FHLBB was quoted in full in the 1985 10-K. No material omission occurred with regard to this letter.
 
 3. RICO
 
 22
 Turner also alleges an on-going RICO conspiracy between the FHLBB and FCA. However, a RICO claim requires an underlying predicate act of securities fraud. Occupational-Urgent Care Health Systems, Inc. v. Sutro & Co., Inc., 711 F.Supp. 1016, 1019 (E.D.Cal.1989). None was shown here. Furthermore, Turner has not presented sufficient evidence of continuing fraudulent activity or the threat of such activity. Summary judgment was proper under these circumstances. H.J. Inc. v. Northwestern Bell, 492 U.S. 229 (1989).
 
 4. Common Law Fraud Claims
 
 23
 Summary judgment for defendants/appellees was also granted on Turner's common law fraud claims. Where Turner has established neither the basic elements of material misrepresentation nor reliance, summary judgment was proper.
 
 
 24
 5. Turner's Request for Additional Discovery
 
 
 25
 Turner contends that it was error not to allow him additional time for discovery. Turner has not alleged specifically what would be gained by conducting discovery. A party is not entitled to discovery based on the mere assertion that there are genuine issues of material fact. Hall v. Hawaii, 791 F.2d 759, 761 (9th Cir.1986). Denial of the discovery request was proper where discovery would not alter the basis of summary judgment. California Union Insurance Co. v. American Diversified Sav. Bank, 914 F.2d 1271 (9th Cir.1990), cert. denied sub. nom., Sahini v. Harbor Ins. Co., --- U.S. ----, 111 S.Ct. 966 (1991). The district court did not abuse its discretion in denying Turner's discovery request.
 
 III. Conclusion
 
 26
 The district court's decision to grant summary judgment is affirmed. No abuse of discretion was committed by ordering Turner's deposition, by denying him leave to amend his complaint or by denying his request for additional discovery.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3